UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BALLARD TERMINAL RAILROAD CO., LLC, a Washington limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF KIRKLAND, a Washington municipal corporation,<br><br>Defendant. | CASE NO. C13-586MJP<br><br>ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION |

This matter comes before the Court on Plaintiff's motion for a temporary restraining order (Dkt. No. 2) and Defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim (Dkt. No. 14). Having reviewed the motions, all related briefing (Dkt. Nos. 19, 20, and 23) and the remaining record, and having heard the oral argument of the parties on May 3, 2013, the Court enters the following ORDER:

This matter is DISMISSED for lack of subject matter jurisdiction.

**Background**

This is a rails-to-trails case. Plaintiff Ballard Terminal Railroad Company, LLC ("Ballard") asks the Court to enter a temporary restraining order enjoining Defendant City of Kirkland ("Kirkland") from removing rail assets along a 5.75 mile segment of track that Kirkland owns. (Dkt. No. 2 at 1.)

The line at issue has a complex history. It was built in 1891 by the Northern Pacific Railway Company to connect Kirkland with a major railroad line in Renton, Wash. (Dkt. No. 14 at 26-27.) After a series of mergers, BNSF Railway Company ("BSNF") became the owner of the line in 1996. (Id. at 27.) In the middle of the last decade, the level of traffic on the line began declining, from 263 carloads in 2005 to less than half that number in 2008. (Id.)

In August 2008, BSNF applied to the Surface Transportation Board ("the Board"), the federal regulatory agency charged with managing the nation's railroad infrastructure, for authority to abandon the line. (Dkt. No. 20 at 3.) BNSF planned to sell the line to the Port of Seattle, and to enter into a trail use agreement with King County under the federal railbanking program. (Id. at 4.) On November 28, 2008, the Board issued its Decision and Notice of Interim Trail Use or Abandonment ("NITU"), where it ordered that, subject to certain conditions, BNSF could railbank or abandon the line. (Dkt. No. 14 at 31.) The two conditions the Board imposed related to protecting historical properties along the route and ensuring passage of fish through culverts along the line. (Id. at 3.)

On December 18, 2009, BNSF entered into a Trail Use Agreement with King County, where it transferred to the county its common carrier rights, including the right to restart rail service. (Dkt. No. 15 at 4.) In connection with this agreement, BNSF sold its property interests in

1   the line to the Port of Seattle. (Dkt. No. 14 at 4.) Between 2009 and 2012, the Port of Seattle
2   conveyed all of its interest in the line to various regional stakeholders. (Id.)

3   On April 13, 2012, Kirkland purchased from the Port a 5.75 mile-long segment of the line
4   known as the Cross Kirkland Corridor, which is the subject of this case. (Dkt. No. 20 at 6.)
5   Because it found that "[t]he [Corridor] provides a green pathway through a heavily urbanized
6   area," the City planned to develop a trail, with salvage of the existing rails as the first step. (Id.)
7   Kirkland published an Invitation to Bid on the Cross Kirkland Rail Removal Project on February
8   26, 2013. (Id. at 7.) On March 29, 2013, Kirkland awarded the salvage contract to A&K Railroad
9   Materials, Inc. (Id.) Kirkland was awaiting the contract documents when this action was filed.
10  (Id.)

11  Plaintiff Ballard Terminal Railroad Company became involved with this area of track in
12  2009, when it was selected by BNSF, with approval from the Port of Seattle, to provide common
13  carrier freight service on the segment of the line directly north of the segment at issue in this
14  action. (Dkt. No. 20 at 5.) Since 2009, Ballard has continued to run actual freight operations
15  under contract to various other operators. (Id.)

16  Asserting that a demand for rail service has recently developed on Kirkland's section of
17  the line, Plaintiff submitted two petitions to the Board on April 1, 2013. (Dkt. No. 19 at 4.) The
18  first was a Verified Petition for Exemption Pursuant to 49 U.S.C. § 10502, which would enable it
19  to acquire the residual common carrier rights and obligations relating to the line at issue here,
20  including the right to reinstate rail service. (Id. at 5.) The second was a Petition to Vacate Interim
21  Trail Use. (Id.) The same day, Plaintiff filed the present motion for a temporary restraining order,
22  asking this Court to enjoin Kirkland from removing the rail assets and require Kirkland to issue
23
24

ORDER DISMISSING CASE FOR LACK OF
SUBJECT MATTER JURISDICTION- 3

an environmental impact statement, pursuant to the Washington's State Environmental Policy Act, RCW 43.21C.030(2)(c). (Dkt. No. 2 at 8.)

Defendant argues that this case should be dismissed because it constitutes a collateral attack on the Board's 2008 NITU order authorizing salvage of the track, and that the Ninth Circuit Court of Appeals is the lone forum with jurisdiction to hear such challenges. (Dkt. No. 14 at 5.) Defendant also argues that SEPA is preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 701 et seq. (Dkt. No. 14 at 9.)

**Discussion**

Because Plaintiffs' claims in this action constitute a collateral attack on the Surface Transportation Board's 2008 Decision and Notice of Interim Trail Use or Abandonment ("NITU") Order, this Court lacks subject matter jurisdiction over this matter. The Hobbs Act makes the Court of Appeals the exclusive forum to bring a collateral attack of a Board order. In relevant part, it states: "Except as otherwise provided by an Act of Congress, a proceeding to enjoin or suspend, in whole or in part, a rule, regulation or order of the Surface Transportation Board shall be brought in the court of appeals, as provided by and in the manner prescribed in chapter 158 of this title." 28 U.S.C. § 2321(a). Chapter 158, in turn, provides that the Court of Appeals "has exclusive jurisdiction to enjoin, set aside, suspend . . . or to determine the validity of . . . all rules, regulation, or final orders" of the Board. Id. at § 2342(5).

Each of Plaintiff's attempts to skirt this jurisdictional bar fails. First, Plaintiff's assertion that its TRO motion relates not to the 2008 NITU order, but to its current petitions before the Board, misconstrues the Hobbs Act's jurisdictional limits. (Dkt. No. 19 at 9.) Even though there is a current proceeding before the Board, Plaintiff's lawsuit in this Court still seeks to negate a Board order that remains in effect until the Board vacates it. (Id.) Second, contrary to Plaintiff's

assertions, there is no indication that the Board's recent notices setting a schedule for public comment on Plaintiff's petitions have the effect of vacating its prior order. (Dkt. No. 19-4.) Because the practical effect of the TRO requested by Plaintiff would be to suspend the Board's 2008 NITU order, the Hobbs Act bars this Court from adjudicating Plaintiff's complaint. See Dave v. Rails-To-Trails Conservancy, 79 F.3d 940 (9th Cir. 1996) (court should look to the practical effect, not simply the format of a claim, to determine whether it is a collateral attack).

Even if the Hobbs Act did not strip this Court of jurisdiction, the Court would nevertheless dismiss Plaintiff's claims under the primary jurisdiction doctrine because all of the issues raised by Plaintiff are committed to the special expertise of the Board. Under the prudential doctrine of primary jurisdiction, courts may "determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." Syntek Semiconductor Co. v. Microchip Tech., Inc., 307 F.3d 775, 780 (9th Cir. 2002). The doctrine "applies where there is (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to the statute that subjects and industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." Davel Commc'ns, Inc. v. Qwest Corp., 460 F3d 1075, 1086-87 (9th Cir. 2006) (internal quotations omitted). Each of these factors applies here. Pursuant to the ICCTA, the issues of whether the NITU order should be vacated and freight rail service reactivated are exclusively within the Board's jurisdiction. See 49 U.S.C. § 10501(b). Resolution of these issues involves specialized questions about whether reactivation of rail service is consistent with rail transportation policy. It requires uniform administration because of the common carrier powers and rights that would be conferred on Plaintiff if its petitions are

1  granted. These issues are currently pending before the Board, and the Court will allow the Board
2  to address them.
3       Finally, the Court is not persuaded by Plaintiff's argument that this Court should exercise
4  jurisdiction because the Board "is not set up to do so in an expedited manner." (Dkt. No. 2 at 8
5  n.2.) In fact, the Board already has a process for issuing the equivalent of preliminary
6  injunctions. Title 49 U.S.C. § 721(b)(4) expressly provides that the Board may, "when necessary
7  to prevent irreparable harm, issue an appropriate order . . . ." In both its briefing and in oral
8  argument, Plaintiff was unable to provide any persuasive evidence that the Board would be
9  unable to address its concerns in an expedited fashion. For the foregoing reasons, the Court
10 determines that it lacks jurisdiction over this matter and declines to reach the merits of Plaintiff's
11 motion for a temporary restraining order.

## Conclusion

13      Because the Court lacks subject matter jurisdiction over this matter, this matter is
14 DISMISSED.
15      The clerk is ordered to provide copies of this order to all counsel.
16      Dated this 13th day of May, 2013.

                                       Marsha J. Pechman
                                       United States District Judge